**quinn emanuel** trial lawyers | new york

295 Fifth Ave, 9ᵗʰ Floor, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7140**

WRITER'S EMAIL ADDRESS
**marcgreenwald@quinnemanuel.com**

December 5, 2025

<u>Via E-Mail</u>

Honorable Denise Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     <u>*United States v. Pena*; 25 CR 249 (DLC)</u>

Dear Judge Cote:

　　We write respectfully on behalf of Defendant Micheal Pena in advance of his sentencing, currently scheduled for December 18, 2025. For the reasons set forth in this letter, a sentence of 90 months, which is substantially below the Stipulated Guidelines Range, will be "sufficient, but not greater than necessary" to satisfy the sentencing factors in 18 U.S.C. § 3553(a).

## OVERVIEW

　　On September 11, 2025, Mr. Pena pleaded guilty to Count One on the Indictment, conspiracy to commit bank fraud under 18 U.S.C. § 1349, in relation to managing and facilitating a check fraud scheme. Mr. Pena entered an early guilty plea, takes full responsibility for his conduct, and profoundly regrets his actions. Pursuant to the plea agreement with the Government, the Stipulated Guidelines Range is 121 to 151 months, based on a Criminal History Category of I, and driven in large part by an "intended loss" amount of $53 million. *See* Plea Agreement at 3.

　　The plea agreement permits Mr. Pena to seek a sentence below the Stipulated Guidelines range pursuant to the factors in 18 U.S.C. § 3553(a). *See* Plea Agreement at 3. Here, a 90-month

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

sentence is appropriate: it captures the severity of Mr. Pena's conduct while accounting for his youth, personal circumstances, and rehabilitative potential.

Mr. Pena's personal circumstances and strong rehabilitative potential warrant a 90-month sentence. Mr. Pena comes from an economically disadvantaged background. He grew up with limited parental guidance, and he witnessed domestic violence and alcohol abuse in his home from a very young age. Throughout his life, Mr. Pena has struggled with his mental health, behavioral issues, and addiction. Nevertheless, he has already made significant strides towards self-improvement and rehabilitation, even while incarcerated. The sentence he receives should account for his perseverance in difficult circumstances as well as his future potential.

In addition, the Stipulated Guidelines Range significantly overstates Mr. Pena's culpability. We have stipulated, and do not dispute, that $53 million is the correct calculation under the Guidelines for the intended loss amount associated with the fraud. However, that amount does not reflect the actual amount lost by any victim, nor does it reflect the amount gained by Mr. Pena. $53 million is the sum total of the face value of the checks involved in the scheme—and is driving Mr. Pena's sentencing range under the Guidelines despite many of those checks being washed, deposited, and cashed for different amounts (or not deposited or cashed at all). While the Government has not provided us with final figures, we understand it will seek a fraction of that amount in forfeiture and restitution. The amounts that identifiable victims actually lost and what Mr. Pena actually gained, which should be reflected in the Government's restitution and forfeiture requests, provide a better measure of Mr. Pena's actual culpability than the Stipulated Guidelines range.

A below-Guidelines sentence is also more appropriate as compared to similarly situated offenders. As described more fully below, several cases involving significantly more sophisticated, destructive, and significant frauds have resulted in sentences well below the Stipulated Range here. This Court should also ensure the sentence Mr. Pena receives is not grossly disproportionate to the sentences imposed on his co-defendants, who, while certainly being significantly less involved than Mr. Pena, ultimately participated in the same conspiracy.

Mr. Pena also objects to the PSR's recalculation of Mr. Pena's Criminal History Category. The applicable Criminal History Category for Mr. Pena is Category I. ███████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████

Finally, we respectfully request that this Court recommend that the Bureau of Prisons allow Mr. Pena to serve his sentence at a facility where he can complete the drug, alcohol, and gambling counselling referred to in the Pre-Sentence Report. *See* PSR ¶¶ 99-100.

**ARGUMENT**

## I.    A BELOW-GUIDELINES SENTENCE OF 90 MONTHS IS WARRANTED.

### A.    Mr. Pena's personal circumstances and rehabilitative potential warrant a sentence significantly below the Stipulated Guidelines Range.

Mr. Pena's disadvantaged background and the numerous challenges he has experienced in his upbringing are mitigating factors to consider on sentencing. While certainly not excusing or justifying his actions, they contextualize the offense as a misguided attempt to make money by a marginalized person with a troubled past.

From a very young age, Mr. Pena was exposed to domestic violence and alcohol abuse, repeatedly witnessing his father abusing his mother in his parents' home. PSR ¶ 75. When he was two years old, Mr. Pena's grandmother, ███████████, took legal custody of him due to the abuse. PSR ¶ 83. Mr. Pena's father also has a criminal history and was absent during most of his son's formative years, depriving him of much-needed parental support and guidance. PSR ¶ 76. Although Mr. Pena never lacked necessities and was grateful for what his family was able to provide him with, he grew up lower-class. The Pre-Sentence Report explicitly connects the instant offense to his economic background, noting that "he did not have money during his childhood and the items he was able to buy with his proceeds from the instant offense brought him happiness." PSR ¶ 50.

Mr. Pena's history of mental health issues and problems with impulse control also provide insight into the instant offense—including the scale of the fraud and how it rapidly spiraled out of control. PSR ¶ 83. As a child, Mr. Pena was classified as having a learning disability, struggled with behavioral issues, and attended multiple educational institutions. *See* Exs. A, B. He was diagnosed with ADHD and anxiety from a young age. Combined with his other personal difficulties, this led him to act out, self-medicate with marijuana, and ultimately—at the urging of his grandmother—to spend time in a residential treatment facility as a teenager. PSR ¶ 83; Exs. C, D, E. Mr. Pena's involvement with the criminal justice system from a young age derailed his education, and he was unable to finish high school. *See* PSR at 3. Finally, Mr. Pena's history of addiction to drugs, alcohol, and gambling has followed him throughout his life and suggests he is in need not of severe punishment, but of help. *See* PSR ¶ 98-100.

Notwithstanding his difficult past, Mr. Pena has made significant strides since he was charged with the instant offense, demonstrating strong rehabilitative potential. Despite the limited opportunities available at MDC Brooklyn, Mr. Pena completed multiple programs designed to assist with his transition back into the community upon release, including Business Enterprise, Parenting, Leadership, and Conflict Resolution programs (the latter in both English and Spanish). *See* PSR ¶ 5 (with additional information obtained from Mr. Pena as of the date of this letter). He is interested in obtaining his GED and becoming financially self-sufficient, including by obtaining a commercial driver's license and becoming a truck driver. PSR ¶ 102, 104. Mr. Pena also freely recognizes his drug, alcohol, and gambling issues and is eager to participate in treatment; he has diligently completed or sought to enroll in similar programming in the past. PSR ¶ 99-100. Mr. Pena's commitment to self-improvement has even extended to learning about the justice system—

of his own initiative, he learned how to do legal research while incarcerated, which has helped him better understand his current legal situation and the importance of abiding by the law in the future.

Mr. Pena's prospects for future growth are bolstered by the support he continues to receive from his family. Many of his family members have attended court hearings and, to the extent possible, have done their best to keep in constant contact with him while in custody. The support letters attached as exhibits to this submission underscore the efforts Mr. Pena has made towards personal growth while in custody. Several of his family members note the positive changes they have observed in him and express genuine faith that he will learn from this experience.

██████████, Mr. Pena's grandmother, attests to Mr. Pena's "very difficult childhood" and confirms that the family is "ready to support him in every way possible" to ensure he becomes a productive member of society. Ex. F. Mr. Pena's mother, ██████████, speaks to the "significant emotional and financial toll" his incarceration has taken on her family ("My children are all I have"), but nevertheless highlights Mr. Pena's efforts towards self-improvement, leading her to believe "that he is genuinely committed to changing the direction of his life." Ex. G. Mr. Pena's older brother, ██████████, notes that their family is "very close" and that they have been "deeply affected" by his absence; he is aware of the programs Mr. Pena has completed while at MDC and is working on opening a business so that he can provide Mr. Pena with a "stable, positive environment" in the future. Ex. H. Mr. Pena's younger brother, ██████████, states that the family "feels incomplete" in Mr. Pena's absence and hopes that Mr. Pena will continue down a better path to "be the brother and role model [he has] always known him to be." Ex. I. Even Mr. Pena's 12-year-old niece, ██████████, believes her uncle is a "good" and "soft-hearted man" and asks this Court for "mercy[,] as everybody is a human… My uncle may have committed bad things but I think his actions does not correlate towards [a] harsh sentence" [*sic*]. Ex. J.

Mr. Pena also continues to be supported by his partner of 6 years, ██████████. ██. ██████████ describes Mr. Pena's actions in this case as being out of character, referring to him as her "emotional anchor" and stressing the impact a long sentence of incarceration would have both on him and on those around him. Like his family members, ██████████ speaks to Mr. Pena's "desire to rebuild his life in a positive and productive way." Ex. K. Mr. Pena's friend of 6 years, ██████████, also indicates that the behavior Mr. Pena exhibited in this case does not match who she knows him to be, and that she believes "he is capable of returning to being a productive and positive member of his community." Ex. L.

Despite his incarceration causing them significant hardship, Mr. Pena's loved ones stand by him and believe he is committed to becoming a better person. They will work to keep him on the right path as he serves his sentence, and they will continue to support him upon his release.

Mr. Pena's life history weighs heavily in favor of a sentence significantly below the Stipulated Range. Indeed, the Pre-Sentence Report acknowledges that a non-Guideline sentence may be appropriate, citing variance factors including Mr. Pena's lack of youthful guidance, drug and alcohol dependence, strong familial ties, and expressed remorse. PSR ¶ 126. Crucially, despite finding the applicable Guidelines range to be substantially higher due to her assessment of Mr. Pena as a Criminal History Category III offender, Officer Meyers nevertheless recommended a below-Guidelines sentence of 120 months. PSR at 34. Not only is this recommendation a full 31 months below the bottom end of the Guidelines range she views to be applicable, *it is below even*

4

*the bottom end of the Stipulated Range in the Plea Agreement*—pursuant to which Mr. Pena is not a Category III but a Category I offender. If the Court agrees with the Criminal History Category the parties have stipulated to be applicable, this strongly suggests Mr. Pena should receive a sentence well below the 121-month mark.

**B.      The $53 million intended loss amount is not representative of the actual harm caused by the offense.**

While Mr. Pena takes full responsibility for the fraud and its severity, a sentence within the Stipulated Guidelines Range would be disproportionately harsh. The most significant factor driving the 121 to 151 month range is the intended loss amount of $53 million, which increases the offense level by 22 points. Plea Agreement at 2. At first blush, this loss amount is staggering. Crucially, however, it inaccurately portrays the actual harm Mr. Pena's actions caused and is therefore divorced from "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1).

Rather than being correlated with any real or tangible amount of money gained or lost in relation to the fraud, the $53 million represents the sum total of the face value of the checks posted in the messaging channel used to facilitate the offense. This amount is an inherently unreliable indicator of the offense's seriousness—not least because the scheme involved "washing" and cashing checks in amounts distinct from their intended value, and because many of the checks posted in the channel may not even have been deposited at all.

Furthermore, Mr. Pena made nowhere close to $53 million in proceeds from this fraud. While the Government has yet to provide an amount of forfeiture, the defense understands the amount sought will be a small fraction of the $53 million figure. The Complaint indicates that the payment platform accounts used to receive payments for the stolen checks "received more than $750,000"—a far cry from the multi-million dollar scheme this case appears to be on its face. Dkt. 1 at 6.

While the Government has not provided a final amount of requested restitution, it is anticipated that amount will not rise to the level of $53 million, either, and will be more modest. As made clear in the Pre-Sentence Report, any restitution will be limited to compensating financial institutions for the amounts they paid out to make the affected individuals whole. PSR ¶ 48. The risk of loss to which Mr. Pena exposed these individuals, and the actual loss incurred by the banks, are no doubt significant factors to consider in assessing the seriousness of the offense—indeed, under the Guidelines, the greater of actual or intended loss governs. USSG §2B1.1.

Nevertheless, a Guidelines sentence may result in unfairness and disproportionality where there is a serious disconnect between actual and intended loss. Indeed, the Sentencing Commission has identified "reassessing the role of actual loss, intended loss, and gain" as a priority in its next amendment cycle ending May 1, 2026, suggesting it is alive to this issue—and may even change the law as a result. *See* United States Sentencing Commission, "Federal Register Notice of Final 2025-2026 Priorities," online: https://www.ussc.gov/policymaking/federal-register-notices/federal-register-notice-final-2025-2026-priorities. In Mr. Pena's case, imposing a Guidelines sentence would hold him responsible for a loss amount divorced from the reality of the offense and his true degree of culpability.

**C.    A below-Guidelines sentence is appropriate as compared to similarly situated offenders.**

Due in part to the overpowering role the loss amount plays in the Guidelines calculation, Mr. Pena faces substantially more time in prison as compared to similarly situated offenders. A below-Guidelines sentence will promote "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). Indeed, a downward departure is warranted because Mr. Pena faces substantially more time even as compared to offenders who have done far worse.

Offenders who have committed frauds significantly more sophisticated and destructive than Mr. Pena's have nevertheless received sentences substantially lower than the Stipulated Guidelines Range. For example, in *United States v. Smerling*, No. 21-CR-317, 2024 WL 1208908, at *1 (S.D.N.Y. Mar. 21, 2024) (DLC), the defendant engaged in a complex scheme by which he created private equity funds and raised capital from both financial institutions and individual investors through a series of fraudulent statements and documents. Despite the tremendous loss to victims of $133 million, the agreed Guidelines range was 97 to 121 months, with a Criminal History Category of I. The Court described the offense as "a brazen crime committed over many years, millions of dollars stolen with no excuse." *See id.*, Dkt. 49, Transcript of Proceedings, p. 3, ll. 23-25; p. 39, ll. 7-8. Indeed, the Government had argued there were no mitigating factors to speak of; unlike Mr. Pena, the defendant had committed the fraud despite a stable home life, numerous educational and professional successes, and a world of opportunities at his disposal. *Id.* at 8, ll. 21-25. Nevertheless, the defendant received a sentence of 97 months, at the bottom of the Stipulated Range. *See id.*, p. 39, ll. 14-15; *Smerling*, 2024 WL 1208908 at *1.

Offenders who exhibited other aggravating factors not present in Mr. Pena's case have also gotten substantially less time in this Court. Although Mr. Pena's conduct was reprehensible, he did not know the individuals associated with the checks involved in the scheme and the ultimate victims of the fraud were financial institutions. By contrast, in *Chiu*, the offender, who stole $2.4 million from at least six client accounts over the course of two years, exploited the trust and dependence of elderly and disabled victims; in that case, the offender received a sentence of 48 months. *See United States v. Chiu*, 2024 WL 4451829 at *1 (S.D.N.Y. Oct. 9, 2024) (DLC). Cases in which offenders targeted funds designed to aid vulnerable people have also resulted in lower sentences. *See e.g. United States v. Weir*, 2024 WL 3429480 at *1 (S.D.N.Y. July 16, 2024) (DLC) ($5.4 million fraud against fund for veterans in financial distress, which personally enriched defendant by $2.5 million, attracted a 30-month sentence); *United States v. Ndukwe*, 2024 WL 3498595 at *1 (S.D.N.Y. July 22, 2024) (DLC) (fraud scheme against program assisting Medicaid beneficiaries with transit expenses associated with treatment, resulting in $7 million Medicaid losses, led to 60-month sentence).

There is also no indication that Mr. Pena withheld information or otherwise misled the authorities about his involvement in the fraud; in fact, he accepted responsibility early and has been cooperative and forthwith from the start. In comparison, in *Stojanovich*, an offender who perpetrated a $2 million fraud involving over a dozen victims, actively committed perjury to conceal the scheme during litigation brought by one of his victims; he received a 36-month sentence. *United States v. Stojanovich*, 2024 WL 3429478, at *1 (S.D.N.Y. July 16, 2024) (DLC).

The Stipulated Guidelines Range puts Mr. Pena in a category above all of these offenders—strongly suggesting a downward departure is warranted. Mr. Pena's request for a 90-month sentence is appropriate and reasonable by comparison.

A below-Guidelines sentence would also ensure that Mr. Pena's sentence is not grossly disproportionate to that of his co-defendants. As the individual who ran the fraud's platform and directed the co-defendants to participate in the scheme, Mr. Pena's degree of responsibility significantly overshadows that of his co-defendants. The Stipulated Guidelines Range incorporates a 2-point sentencing enhancement for Mr. Pena's degree of responsibility as a "manager" among this group of co-defendants, which appropriately accounts for his increased involvement. *See* USSG § 3B1.1(c).

Nevertheless, the disparity between the Stipulated Range and the co-defendants' potential sentences is troubling. As discussed above, Mr. Pena's Stipulated Guidelines Range of 121 to 151 months is driven in large part by the full $53 million dollar intended loss amount. By contrast, co-defendants Mr. Gutierrez, Mr. Dorsey, and Mr. Delahoz are being held responsible only "for the intended loss associated with the checks they deposited, which amounts to between $150,000 and $250,000"—which will result in drastically lower sentences for knowing and willful participation in the same conspiracy. PSR ¶ 44. The fact that Mr. Pena faces a sentence exponentially larger than his co-conspirators suggests the Stipulated Range is disproportionately harsh.

Finally, a below-Guidelines sentence would better reflect how other white-collar offenders are being treated by the Federal Government. Under the current administration, multiple white-collar offenders have recently received Presidential pardons and had their convictions and sentences vacated as a result. Many of these individuals were responsible for millions of dollars in losses. *See* U.S. Department of Justice, Office of the Pardon Attorney, "Clemency Grants by President Donald J. Trump (2025-Present)," online: https://www.justice.gov/pardon/clemency-grants-president-donald-j-trump-2025-present (listing pardons including Devon Archer, conspiracy to commit securities fraud with $43 million in restitution; Jason Galanis, multiple counts of conspiracy to commit securities fraud with sum-total restitution of approximately $85 million; Todd Chrisley, conspiracy to commit bank fraud with $17 million in restitution; and others). While nothing excuses or justifies Mr. Pena's actions in this case, given his marginalized background, he lacks the political connections to even dream of such an outcome. A 90-month sentence will ensure that his actions are placed in this broader context.

## II.    OTHER CONSIDERATIONS

### A.    The applicable Criminal History Category is Category I.

Mr. Pena objects to the PSR's assessment of Mr. Pena's Criminal History Category. Consistent with what the parties have stipulated, the applicable Criminal History Category is Category I, ██████████████████████████████████████████████ ██████████ .

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████



██████████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

Mr. Pena also respectfully provides the following additional objections and clarifications to the Pre-Sentence Report:

1. At pp. 14-15, the Pre-Sentence Report provides substantial new information about Mr. Pena's criminal record in New Jersey and indicates "the defendant did not make a statement during the pre-sentence interview in connection with this offense." For clarity, Mr. Pena was not asked about this offense during the interview, and the additional details provided in the report were not included in the initial disclosure.

2. At p. 33, the Pre-Sentence Report describes Mr. Pena's conduct as leading "to a multimillion-dollar loss." For clarity, and as acknowledged elsewhere in the report, the Government has yet to provide a figure for restitution; the Officer may be referring to the intended loss amount in the Stipulated Guidelines Range.

3. At p. 3, the Pre-Sentence Report indicates that, according to records received from MDC Brooklyn, Mr. Pena identifies himself as a former Mac Baller. When he was 16 years old, Mr. Pena was in a group of youths in his community who referred to themselves as "Mac Ballers." However, he dropped out of the group when he was around 18 years old and no longer has any such affiliation.

**B.    The Court should recommend that Mr. Pena be housed in a facility near New York where addiction counselling is available.**

We respectfully request that the Court recommend to the BOP that Mr. Pena serve his within a reasonable distance of his family in Manhattan so that he can continue to benefit from their support. Given Mr. Pena's admitted problems with drug, alcohol, and gambling addiction and his willingness to participate in treatment, we also respectfully request that the Court recommend he be sent to a facility where he may receive such counselling. *See* PSR ¶ 99-100. The Court may properly "discuss[] the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs" and "make recommendations to the [BOP] concerning rehabilitation. *United States v. Neal,* 517 F. App'x 20, 21 (2d Cir. 2013), citing *Tapia v. United States,* 564 U.S. 319, 131 S. Ct. 2382, 2384, 180 L. Ed. 2d 357 (2011). Although Mr. Pena could only access very limited programming while in pre-sentence custody at MDC Brooklyn, the initiative he took and progress he made while in custody shows he will take full advantage of future opportunities in the facility where he is sentenced. Combined with access to educational and vocational training, the ability to participate in rehabilitative treatment will assist Mr. Pena with reintegrating into society upon release.

## <u>CONCLUSION</u>

For the reasons set forth in this letter, Mr. Pena respectfully requests that the Court sentence him pursuant to 18 U.S.C. § 3553(a) to 90 months in prison.

Respectfully submitted,

*/s/ Teodora Pasca*

Marc Greenwald
Teodora Pasca

cc:  AUSA Varun Gumaste

Attachments

# EXHIBIT A

Omitted From Public Record

# EXHIBIT B

Omitted From Public Record

# EXHIBIT C

Omitted
From Public
Record

# EXHIBIT D

Omitted
From Public
Record

# EXHIBIT E

Omitted
From Public
Record

# EXHIBIT F

November 14, 2025

**From:**



**To:**
Honorable Denise Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Cote,

My name is  and I am Micheal Pena's grandmother. Micheal is scheduled to appear before you to be sentenced. I am writing to ask you to please show mercy and leniency when considering his punishment.

Micheal has made a terrible mistake. I know he regrets what he did. I have first-hand knowledge that Micheal has had a very difficult childhood, dealing with having to take medications for ADHD, panic attacks, going to therapy, and seeing a therapist to help him control himself from being impulsive. Although he grew up to be a kind and respectful young man, he somehow lost his way.

I am not asking that he not be punished, but that you show compassion. I truly believe this experience has been a wake-up call for him. Our family is ready to support him in every way possible, so that he can become a productive and responsible member of society.

Your Honor, I respectfully want to thank you for taking the time to read and consider my request for mercy.

Sincerely,

# EXHIBIT G

November 14, 2025

**From:**

███████████

**To:**
Honorable Denise Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Michael Peña

Dear Judge Cote,

I am writing to you as the mother of Micheal Peña. My name is ███████████, and I am a hardworking mother of three children, with Michael being my middle child. For the past eight months, Micheal's incarceration has taken a significant emotional and financial toll on our family. My children are all I have, and trying to support them while also being present for Micheal has been very difficult.

During this time, however, I have seen meaningful changes in my son. He has expressed sincere remorse for his mistakes and has taken steps toward bettering himself. Micheal has been reading more, participating in available programs, and involving himself in trainings that he hopes will help him build a more stable and responsible future. The growth he has shown gives me hope that he is genuinely committed to changing the direction of his life.

As a mother, it has been heartbreaking not being able to support him as much as I would like due to my work responsibilities and caring for my other children. Despite the challenges, I continue to encourage him and remind him of the importance of the positive path he has begun.

Your Honor, I respectfully ask that you consider Micheal's efforts toward self-improvement, his strong family support, and his desire to do better. We truly need him home, and I believe he has the potential to become a productive and responsible member of our family and community.

Thank you for taking the time to read this letter and for considering my words.


Respectfully,

███████████

# EXHIBIT H

November 21, 2025

**From:**

███████████

**To:**
Honorable Denise Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Cote,

I hope this letter finds you well. My name is ███████████, and I am the older sibling of Micheal Peña. I am writing respectfully to share the progress he has made while incarcerated and to ask whether the court might consider any available options for early release or sentence modification, if appropriate under the law.

Micheal is the middle child in our family, and we also have a younger brother. Both of my younger brothers look up to me, and I have always tried to be a positive example for them. Our family is very close, and Micheal's absence has deeply affected us. Before his incarceration, Micheal and I spoke every day. Now we don't speak often.

During his time in custody, Micheal has taken meaningful steps toward improving his life. He has participated in programs, including an Entrepreneurship course, as well a Conflict Resolution course completing both. Micheal is committed to continuing his personal growth. He is still young, motivated, and determined to build a better future for himself and for our family.

I am currently working on opening a business so that when Micheal comes home, he can work alongside me and have a stable, positive environment. Our youngest brother and our mother are all we have, and bringing Micheal home would allow us to support each other and give him the chance to contribute to our family in a healthy and productive way. He talks often about wanting to work with me and do better, and I truly believe he deserves a second chance.

I fully respect the court's authority, the law, and the seriousness of Micheal's situation. My intention is not to minimize his past actions but simply to share his progress, our family's strong support system, and our hope that his efforts toward rehabilitation can be taken into consideration in any way the court finds appropriate.

Thank you for your time, your understanding, and for considering this request. My family and I deeply appreciate your attention and the work you do.

Respectfully,



# EXHIBIT I

November 14, 2025

**From:**

███████████

**To:**
Honorable Denise Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Micheal Peña

Dear Judge Cote,

My name is ████████, and I am Micheal Peña's youngest brother. I am writing this letter to share how much I miss my brother and how his absence has affected me and our family.

I have not seen Micheal in eight months because I am in school and do not have the ability to visit him. My mom works hard to support us, so I don't always get the chance to speak to him when he calls. It's been very difficult. My birthday recently passed, and although it's normally something we celebrate as a family, we didn't celebrate this year—it just didn't feel the same without Micheal.

Growing up, Micheal was always someone I looked up to. He gave me advice, he kept me motivated, and he always made sure I stayed on the right path. He'd always joked that we were like the trio: Micheal, ████████. Without him, it really feels like something important is missing, our family feels incomplete.

Even though he's been away, I've heard from my mom how much he's been trying to change his life. He's been reading more, participating in trainings, and trying to improve himself. It gives me hope that when he comes home, he'll continue on this better path and be the brother and role model I've always known him to be.

Your Honor, I respectfully ask that you consider the positive steps Micheal has been taking. I miss my brother every day, and I truly believe he wants a better future. Having him home again would mean everything to me and to our family.

Thank you for taking the time to read my letter.

Respectfully,

███████████



# EXHIBIT J

Dear Judge

Hi! my name is ████ i am 12 years old, i am the niece of micheal Pena. I belive everybody deserves an punishment for their actions. However i belive there should be a certain limit towards punishments. Though those who condone wrongs should be punished for their actions, they should also be given mercy as everybody is a human and sometimes would do wrongs. My uncle may have commited bad things but i think his actions does not correlate towards the harsh sentece of my uncle. My uncle is a very good man, I have grown up with him making him feel like a sibling to me. under his rough exterior he is a really soft hearted man who brings pride and joy to his family members. Reading this i hope you feel a sense of sympathy for him and perform a miracle for not only me but him and my family.

Love, ████

# EXHIBIT K

December 2, 2025

**The Honorable Denise Cote**
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Dear Judge Cote,

My name is ███████████, and I live in New York, Ny. I am writing on behalf of my significant other, Micheal Pena, whom I have been with for 6 years. I appreciate the opportunity to share my perspective, because Micheal has been a deeply important and positive part of my life, and I hope that the information I provide will be helpful as you consider his sentencing.

I am writing to express who Micheal is outside of the circumstances that bring him before you. Micheal is someone who has always shown immense care, patience, and genuine kindness—qualities that have impacted not just me but many people in his life. From the beginning of our relationship, he has consistently been supportive, encouraging, and dependable. Whether it was helping me through difficult moments in my personal life or stepping up for his family when they needed him, Micheal has always put the people he loves first.

Micheal has also been a steady emotional anchor for me. His compassion, his humor, and his ability to stay calm during stressful times are qualities that have made a meaningful difference in my life.

Micheal's relationships with his family and friends show the same qualities. He is deeply connected to them, and they rely on him for guidance, emotional support, and stability. A long sentence would not only impact Micheal but would also have a significant effect on the people in his life who depend on him. I have seen firsthand how committed he is to bettering himself and making sure he never finds himself in a situation like this again. He talks often about the changes he wants to make and the goals he has for his future, particularly his desire to rebuild his life in a positive and productive way.

If I may share my honest view, based on knowing Micheal closely and personally, the actions he pled guilty to do not reflect the man I know. The Micheal I know is caring, responsible, and thoughtful. I understand the seriousness of this situation, and I am not writing to excuse his actions, but simply to give you a fuller picture of Micheal's character and the positive contributions he has made to the lives around him.

I respectfully ask that you consider this letter when making your decision. I believe that Micheal has the capacity to grow, rebuild, and return to being the supportive and caring person he has always been to me and to others.

Thank you, Judge Cote, for taking the time to read my letter and consider my perspective. I am truly grateful for your attention.

Respectfully,

█████████

# EXHIBIT L

December 2, 2025

**The Honorable Denise Cote**
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Dear Judge Cote,**

My name is ████████████ and I am a friend of Micheal Pena. I am writing to provide a brief statement about my experience knowing him.

I have known Micheal for 6 years, and in that time he has always been respectful, dependable, and easy to work with in any situation. He communicates clearly, follows through on commitments, and has been someone I can rely on. In my interactions with him, he has consistently acted responsibly and professionally.

I understand the seriousness of his case, but the behavior involved does not match the way I have known him to conduct himself. Based on my time knowing Micheal, I believe he is capable of returning to being a productive and positive member of his community.

Thank you for taking the time to read this letter and consider my perspective.

Respectfully,

████████████

# EXHIBIT M

Under
Seal